UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| ROSA CABRERA and NELSON MARQUEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| HIALEAH HOUSING AUTHORITY, INC. | ) | |
| CITY OF HIALEAH, | ) | |
| AND RENE GUTIERREZ, his official | ) | |
| And individual capacity | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT**

NOW COME the Plaintiffs, ROSA CABRERA and NELSON MARQUEZ[1][2][3], by and through undersigned counsel and hereby move the Court for entry of judgment in their favor against the Defendants, HIALEAH HOUSING AUTHORITY, INC., CITY OF HIALEAH, and RENE GUTIERREZ, in support of such Complaint aver as follows:

**NATURE OF ACTION AND JURISDICTION**

1.  This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States; retaliating against Plaintiffs for their exercise of constitutionally protected religion; and for refusing or neglecting to prevent such deprivations and denials to Plaintiffs.

2.  This case arises under the United States Constitution and 42 U.S.C. Sections 1983 and

---

[1] When referred to in the collective "Plaintiffs".
[2] When referring to Plaintiff, Rosa Cabrera solely "Rosa".
[3] When referring to Plaintiff, Nelson Marquez solely "Nelson".

1988, as amended. This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1343. The declaratory and injunctive relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. Section 1983 and Rule 57 of the Federal Rules of Civil Procedure.

3. Plaintiffs also bring civil action for Intentional Infliction of Emotional Distress.

4. Plaintiffs bring this action resulting from damages incurred due to their unlawful termination of Section 8 Program Assistance because of religious discrimination on or about May 7, 2014.

5. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b)(1) and (b)(2). The actions complained of took place in this judicial district; evidence and housing records relevant to the allegations are maintained in this judicial district. The Defendants are present and regularly conduct affairs in this judicial district.

6. All administrative procedures have been satisfied or have been waived. (See Exhibit A)

## PARTIES

7. Plaintiff, Rosa Cabrera, is a former Section 8 voucher holder from the Hialeah Housing Authority, Inc. She currently resides in the State of Florida.

8. Plaintiff, Nelson Marquez, is a current Section 8 voucher holder from the Authority of the City of Miami Beach, who suffered damages due to the discriminatory actions of the Hialeah Housing Authority, Inc. He currently resides in the State of Florida.

9. Defendant, Hialeah Housing Authority, Inc., is a corporate body and a political subdivision of the City of Hialeah established by Resolution Number 2728, which established the Hialeah Housing Authority, an unincorporated instrumentality of the City of Hialeah, duly organized and existing pursuant to Florida Statute 421.

10. Defendant, City of Hialeah, is a corporate body and a political subdivision of the State of

Florida duly organized and existing pursuant to the Florida Statutes and/or Florida Constitution.

11. Defendant, Rene Gutierrez, is a Fraud Investigator of Hialeah Housing Authority. He is sued for damages in his individual capacity and for declaratory and injunctive relief in his official capacity.

## FACTS

12. On or about May 3, 2014, Nelson was visiting Rosa's apartment. Plaintiffs were worshipping in Rosa's Orisha room[4] in her house.

13. Rene Gutierrez (hereinafter "Gutierrez"), an investigator of the Hialeah Housing Authority, who was dressed in a uniform resembling a police officer, knocked on Cabrera's front door.

14. Cabrera opened her front door and Gutierrez advised Rosa that he was an inspector with the Hialeah Housing Authority.

15. Gutierrez asked Cabrera if Nelson Marquez lived with her. Cabrera told Gutierrez that Marquez did not live in her house.

16. Gutierrez told Cabrera that he needed to search the apartment, without informing Cabrera that she had the right to deny him permission of the search. Cabrera gave Gutierrez permission to search her home because she felt intimidated because Gutierrez was dressed in a police style uniform, with a handgun and bullet proof vest.

17. Marquez upon hearing the commotion opened the door to the Orisha room.

18. Gutierrez walked directly toward Marquez.

19. Gutierrez asked Marquez if he was Nelson Marquez. Marquez told him that he was.

20. Gutierrez then asked Marquez if he lived in Cabrera's house. Marquez responded that he did not and that he has his own apartment.

_____

[4] Room in which Orisha/Santeria religious idols of my religion.

21. Gutierrez asked Marquez what he was doing in Cabrera's apartment. Marquez told Gutierrez that he was conducting religious rituals in the Orisha room.

22. Marquez then led Gutierrez into the Orisha room and Gutierrez said, "Yes I see this is Satanic stuff."

23. Gutierrez continued to search the house, including the closets. Gutierrez did not find anything and left.

24. Before leaving, at the door, Cabrera asked Gutierrez what was the situation about and what will happen. Gutierrez responded that Cabrera would receive a letter from the Hialeah Housing Authority.

25. On or about May 7, 2014, Cabrera received a letter from the Hialeah Housing Authority (see Exhibit B) in which she was informed that her participation in the Housing Choice Voucher Program was being terminated because:

> "On 05/03/14, the Hialeah Housing Fraud Investigator met with you at your residence. You and Nelson Marquez both admitted that Nelson Marquez has been residing in the unit without approval from the Housing Authority.[5]"

26. Cabrera and Marquez never admitted to residing together. In fact, they specifically told Gutierrez that Marquez did not reside at Cabrera's apartment.

27. Cabrera immediately requested a hearing with the Hialeah Housing Authority.

28. On or about June 3, 2014, Cabrera went to a medical consultation with Rene Hasbun, M.D., who gave Cabrera a letter which indicated that she needed a companion to help her comply with her medications.

29. At the hearing on June 18, 2014, Marquez and Cabrera provided evidence that Marquez

---

[5] Translated from Spanish.

did not live with Cabrera. The evidence provided by Marquez included but was not limited to, his Florida Driver License, Electric Bill, and a Letter from Marquez's landlord.

30. On or about June 20, 2014, Cabrera received a letter from the Hialeah Housing Authority stating that:

> "After careful consideration of testimony and documentation provided by both parties during the hearing the decision had been made to overturn the Hialeah Housing Authority decision to terminate your Section 8 Housing Assistance."

31. On or about July 2014, Cabrera went with her grandson, Luis Calvo (hereinafter "Grandson") to the Hialeah Housing Authority to give them her Doctor's letter. Investigators, Paulette Smith and Nicole Bates took Cabrera to a side room and informed her that she needed to draft a letter stating that she did not charge people for performing religious consultations.[6]

32. Cabrera drafted the letter and the Investigators put it in her file.

33. Investigators, Paulette Smith and Nicole Bates then took Cabrera's Grandson and they asked him if he lived with Cabrera, and where he was employed. The investigators told Grandson to bring a letter from his employer.

34. A few days later, Investigator went to Grandson's place of employment and inquired as to whether Cabrera's Grandson worked there.

35. On or about August 19, 2014, Cabrera again received a letter from the Hialeah Housing Authority (see Exhibit C) informing her again that her participation in the Housing Choice Voucher Program was being terminated because:

> "On 08/14/14 the Hialeah Housing Fraud Investigator, the Housing Authority's Representative, and myself met with you and your grandson, Luis Calvo. Luis Clavo stated he has been residing with you and sometimes Nelson Marquez since his break up with his partner. He stated he needs to take care of his grandmother. The

---

[6] Reading of Tarot Cards and Cowrie Shell Readings.

investigator also found evidence that show your sister Isabel Cabrera is also living at your residence."

36. Cabrera immediately requested a hearing with the Hialeah Housing Authority.

37. On or about November 7, 2014, the hearing was conducted. At the hearing, Investigator said that he had spoken to Cabrera's sister, Isabel Cabrera (hereinafter "Sister")'s, employer and that the employer said that Cabrera's Sister worked at her house providing assistance to an elderly person, that Sister had obtained documents she had laying around the house and changed her address to her place of employment without her authorization.

38. Cabrera's Sister had her Driver License with Cabrera's address solely for mailing purposes. Cabrera's Sister did not live with Cabrera.

39. Cabrera's Sister lived at the home of the elderly lady she was treating. Additionally, at the hearing Cabrera's Sister produced a copy of her insurance policy, which showed that she lived at 5611 SW 2nd Street, Miami, FL 33134 since on or about January 21, 2014 and that she had changed her address on her license to reflect the correct address where she lived.

40. Additionally, as to Cabrera's Grandson, the authority was unable to provide sufficient evidence to support the allegations of unauthorized tenancy.

41. A letter from Grandson's landlord confirmed that he was living at a different address.

42. At the hearing, Gutierrez admitted that he had Cabrera's landlord call Cabrera on a recorded telephone call to ask Cabrera if she charged money for religious consultations. Gutierrez did not ask the landlord to inquire as to who lived with her, instead he focused solely on her religious practices.

43. On or about December 2014, Cabrera went to the Hialeah Housing Authority to ask about

the determination of the hearing because Cabrera did not receive notice of the determination of the hearing in the mail.

44. At that time, Cabrera was advised and given a letter that stated that:

> "The decision had been made to uphold the Housing Authority's decision to terminate your Section 8 Housing Assistance."

45. The letter contained the wrong address. The letter was mailed to 32 NW 32 CT, Miami, Florida 33125 and Cabrera resides at 320 NW 32 CT, Miami, Florida 33125. (See Exhibit D)

46. By the time Cabrera had gone to the Hialeah Housing Authority, the time period to request a hearing on the decision had lapsed.

## STATEMENT OF FACTS (NELSON MARQUEZ)

47. On or about May 3, 2015, NELSON MARQUEZ (hereinafter MARQUEZ) was visiting Cabrera at her apartment located at 320 NW 32 CT, Miami, Florida 33125.

48. Marquez and Cabrera were worshipping in Cabrera's Orisha room in Cabrera's apartment.

49. Rene Gutierrez (hereinafter Gutierrez), an Investigator from the Hialeah Housing Authority, knocked on Cabrera's door.

50. Gutierrez was dressed in uniform and looked similar to a police officer. Cabrera opened the front door and advised Cabrera that he was an investigator with the Hialeah Housing Authority.

51. Gutierrez told Cabrera that he needed to search the house. Cabrera felt intimidated and thus gave Gutierrez permission to search the house.

52. Upon hearing the commotion, Marquez opened the door to the Orisha room and Gutierrez walked directly toward him.

53. Gutierrez asked Marquez whether he lived in the apartment with Cabrera. Marquez indicated that he had his own apartment somewhere else.

54. At that time, Marquez lived and still currently resides at 1905 NE 123 ST, #10, North Miami, Florida 33181.

55. On or about June 18, 2014, Marquez attended a hearing at the Hialeah Housing Authority, where he produced evidence, including but not limited to, his Florida Driver License, utility bill, and a letter from his landlord to prove that he did not live with Cabrera.

56. Gutierrez willingly and falsely reported that Cabrera and Marquez resided together at 320 NW 32 CT, Miami, Florida 33125 and, as a result, Cabrera's Section 8 voucher was terminated.

57. After Marquez provided the evidence, Cabrera's section 8 was reinstated.

58. Following the hearing on June 18, 2014 with the Hialeah Housing Authority, Gutierrez went to Marquez's apartment located in North Miami, Florida.

59. Gutierrez is an Investigator for the Hialeah Housing Authority and he made his way to North Miami just to go to Marquez's apartment.

60. Gutierrez asked the landlord at 1905 NE 123 ST, #10 if Marquez did in fact reside at that address; the landlord confirmed that Marquez had been living there for numerous years.

61. Following this incident, Marquez began to suffer mental and emotional distress. He believes that Gutierrez is out to get him.

62. Marquez cannot sleep at night, he feels like someone is constantly knocking on his door, and he takes pictures of his surroundings day and night, because he believes that Gutierrez is out to get him.

63. On or around November 14, 2014, Marquez received a letter from the North Miami

Housing Authority indicating that his Section 8 Housing Choice voucher was being terminated, which stated:

> "After a recent report from the Hialeah Housing Authority regarding their client, Rosa Cabrera, Mr. Marquez attended a termination hearing held at their agency and he stated he paid for 6 vehicles under her possession. Upon a review of his background we found that he indeed owned several vehicles. The report also shows he has utilities under a different address."

64. On December 4, 2014, Marquez attended a Termination hearing at the Housing Authority of the City of Miami Beach. (See Exhibit E)

65. Mr. Marquez's Section 8 voucher was reinstated after the hearing, following testimony and evidence.  (See Exhibit F)

66. Following the above-detailed events, Marquez's condition escalated so much that his psychiatrist wrote a letter indicating that Marquez would benefit from a live-in-aid due to the medical conditions.

## <u>COUNT I</u>
## <u>Constitutional and Civil Rights pursuant to 42 U.S.C. §§1983, 1988</u>

67.  Plaintiff Cabrera re-alleges and reincorporates paragraphs 1-66 as fully alleged therein.

68. Cabrera's practice of Santeria is protected by the First Amendment of the U.S. Constitution. Please See; *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520,113 S. Ct. 2217,124 L. Ed. 2d 472, 1993 U.S.

69. Cabrera did not live with Marquez when Gutierrez entered her apartment on or about May 3, 2014.

70. Cabrera's grandson did not reside with Cabrera in 2014; in fact he provided a letter from his own landlord indicating that he resided at another address.

71. Cabrera's sister did not reside with Cabrera even though her license indicated Cabrera's

address.

72. Gutierrez discriminated against Cabrera due to her religious beliefs. Ever since the day Gutierrez entered Cabrera's apartment and saw the religious figure, he wanted to terminate Cabrera and Marquez's section 8 vouchers at all cost.

73. Gutierrez acted intentionally and with ill will in regards to Cabrera and Marquez's constitutional rights. Gutierrez asked Cabrera's landlord to call Cabrera and inquire about her religious consultations and went to Marquez's apartment located in North Miami.

74. Gutierrez violated Cabrera's right to freedom of religion because his actions led to her termination of Section 8 voucher. His actions were motivated by her religious practice. Cabrera, has suffered severe emotional distress, as result of the Defendant's actions. Cabrera rarely goes out; she is scared to go out because she fears that Gutierrez is out to get her.

75. Gutierrez violated Marquez's constitutional rights to freedom of religion and as a result, he has suffered severe emotional distress. Marquez does not feel safe leaving his house; he is paranoid and is in constant fear of Gutierrez.

76. At all times material, Rene Gutierrez, was an employee of the Hialeah Housing Authority.

77. The Hialeah Housing Authority and the City of Hialeah are vicariously liable for the unlawful and discriminatory acts of Defendant Gutierrez.

78. WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

     a.   Compensatory Damages;

     b.   Punitive damages;

     c.   An Order, directing the Defendants to reinstate Rosa's Section 8 Voucher;

     d.   Reasonable attorney fees and costs of litigation;

     e.   And any other relief this Court deems just and proper.

**COUNT II**
**TITLE VII**
**Violation of Rights Secured by the Equal Protection Clause of the United States Constitution**

79. Plaintiffs Cabrera and Marquez re-allege and reincorporate paragraph 1-66 as though set forth fully herein.

80. At all times relevant, Gutierrez was an employee of the City of Hialeah Housing Authority, an agency of the City of Hialeah.

81. The acts of the City of Hialeah, the Hialeah Housing Authority, by and through its agent, Rene Gutierrez , were unlawful and discriminatory.

82. Defendants, the City of Hialeah, and the Hialeah Housing Authority, are vicariously liable for the acts of Rene Gutierrez.

83. Gutierrez's action constituted a custom, practice and/or policy of deliberate indifference to both Plaintiffs' Constitutional rights protected by the Equal Protection Clause of the Fourteenth Amendment.

84. All of the Defendants' acts were willful and in reckless disregard of Plaintiffs' constitutional rights.

85. WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

    a. Compensatory Damages;

    b. Punitive damages;

    c. An Order, directing the Defendants to reinstate Rosa's Section 8 Voucher;

    d. Reasonable attorney fees and costs of litigation;

    e. And any other relief the court deems just and proper.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

86. Plaintiffs re-allege and reincorporate paragraphs 1-66 as set forth fully herein.

87. The city of Hialeah and the Hialeah Housing Authority, by and through its agent Rene Gutierrez, acted intentional and in such a way that the Defendant's knew or should have known would cause Marquez and Cabrera severe emotional distress.

88. The acts described herein constitute intentional, outrageous conduct by the Hialeah Housing Authority, the City of Hialeah, by and through their agent, Rene Gutierrez.

89. Defendants engaged in such conduct with conscious disregard and high probability of causing severe emotional distress.

90. The Defendants' outrageous conduct caused Plaintiffs, Cabrera and Marquez severe emotional distress.

91. Both Plaintiffs now live in fear of going outside; they believe they are being pursued by the Defendants.

92. Marquez, in particular, is so afraid to go outside that he takes pictures at all times and keeps documentation of such pictures.

93. Marquez has also been prescribed a list of medications after the incident.

94. Cabrera is also afraid to go outside; she only goes out when she needs to. She also has been prescribed new medication after the incident.

95. The outrageous conduct by the Defendants constitutes Intentional Infliction of Emotional Distress and is actionable under Florida law.

96. Plaintiffs are entitled to compensatory and punitive damages in an amount to be ascertained at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

a. Compensatory Damages;

b. Punitive damages;

c. An Order, directing the Defendants to reinstate Rosa's Section 8 Voucher;

d. Reasonable attorney fees and costs of litigation;

e. And any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

A jury trial is demanded on all issues triable by jury.

Date: June 7, 2016.

## DESIGNATION OF EMAIL ADDRESS

Pursuant to Florida Rule of Judicial Administration 2.516(b)(1), the undersigned law firm hereby designates the following primary email address:

**civil@gallardolawyers.com**

All pleadings, motions, orders, correspondence, and/or other papers should be served on the undersigned at the email address set forth above.

Respectfully Submitted,

GALLARDO LAW OFFICE, P.A.
Attorney for the Plaintiffs
8492 SW 8th Street
Miami, Florida  33144
Telephone (305) 261-7000
Facsimile (786) 261-0088

By: /s/ Alexandra Lopez
Alexandra Lopez, Esq.
Florida Bar No. 109167
Email: civil@gallardolawyers.com