UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-22082-CIV-LENARD/GOODMAN

ROSA CABRERA and
NELSON MARQUEZ,

    Plaintiffs,

v.

HIALEAH HOUSING AUTHORITY,
INC. and RENE GUTIERREZ,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT HIALEAH HOUSING AUTHORITY, INC.'S MOTION TO DISMISS COUNT II OF PLAINTIFFS' FIRST AMENDED COMPLAINT (D.E. 36)

**THIS CAUSE** is before the Court on Defendant Hialeah Housing Authority, Inc.'s ("HHA") Motion to Dismiss Count II of Plaintiffs' First Amended Complaint, ("Motion," D.E. 36), filed October 19, 2016. Plaintiffs Rosa Cabrera and Nelson Marquez filed a Response on November 7, 2016, ("Response," D.E. 40), to which HHA filed a Reply on November 21, 2016, ("Reply," D.E. 45). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

### I.    Relevant Background[1]

Plaintiff Rosa Cabrera is a former Section 8 voucher holder from HHA. (Am. Compl. ¶ 7.) Plaintiff Nelson Marquez is a current Section 8 voucher holder from the

---

[1] The following facts are gleaned from Plaintiffs' First Amended Complaint (D.E. 26) and are deemed to be true for the purposes of ruling on Defendant's Motion.

Authority of the City of Miami Beach.[2]  (Id. ¶ 8.)  Cabrera and Marquez practice the Santeria religion.  (Id. ¶¶ 11 n.4, 67, 78.)

    **a.**    **Cabrera**

On May 3, 2014, Defendant Rene Gutierrez, an HHA fraud investigator, visited Cabrera's apartment while Marquez and Cabrera were conducting religious rituals in Cabrera's worship room.  (Id. ¶¶ 10-12, 20.)  Gutierrez asked Marquez if he lived in Cabrera's apartment.  (Id. ¶ 19.)  Marquez responded that he did not live with Cabrera and that he had his own apartment.  (Id.)  Marquez gave Gutierrez the address to his apartment in North Miami, Florida.  (Id. ¶ 53.)

On May 7, 2014, Cabrera received a letter from HHA informing her that her participation in the Housing Choice Voucher Program was being terminated because:

> On 05/03/14, the Hialeah Housing Fraud Investigator met with you at your residence.  You and Nelson Marquez both admitted that Nelson Marquez has been residing in the unit without approval from the Housing Authority.

(Id. ¶ 24.)  Cabrera immediately requested a hearing with HHA.  (Id. ¶ 26.)  At the June 18, 2014 hearing, Marquez and Cabrera provided evidence that Marquez did not live with Cabrera, including Marquez's Florida Driver's License, electric bill, and a letter from Marquez's landlord.  (Id. ¶ 28.)  On June 20, 2014, Cabrera received a letter from HHA stating that the decision to terminate her Section 8 Housing Assistance had been overturned based upon the evidence presented at the hearing.  (Id. ¶ 29.)

---

[2]     Although the record reflects that Gutierrez lives in North Miami, the Complaint alleges that he is a Section 8 voucher holder from the City of Miami Beach.  (Am. Compl. ¶ 8.)

In July 2014, Cabrera and her grandson went to HHA to deliver a note from Cabrera's doctor that indicated Cabrera needed a companion to help her comply with her medications. (Id. ¶¶ 27, 30.) Two HHA investigators told Cabrera she needed to draft a letter stating that she did not charge people for performing religious consultations. (Id. ¶ 30.) Cabrera drafted the letter and HHA investigators put it in her file. (Id. ¶ 31.)

HHA investigators then asked Cabrera's grandson if he lived with Cabrera. (Id. ¶ 32.) The Amended Complaint does not indicate how (or if) Cabrera's grandson responded.

On August 19, 2014, Cabrera received another letter from HHA informing her that her participation in the Housing Choice Voucher Program was being terminated because:

> On 08/14/14 the Hialeah Housing Fraud Investigator, the Housing Authority's Representative, and myself met with you and your grandson, Luis Calvo. Luis Clavo stated he has been residing with you and sometimes Nelson Marquez since his break up with his partner. He stated he needs to take care of his grandmother. The investigator also found evidence that show your sister Isabel Cabrera is also living at your residence.

(Id. ¶ 34.) Cabrera immediately requested a hearing with HHA. (Id. ¶ 35.) At the November 7, 2014 hearing, an investigator testified that Cabrera's sister, Isabel, worked as a caretaker for an elderly person. (Id. ¶ 36.) Isabel had a Driver's License listing Cabrera's address, however, according to the Amended Complaint, it was "solely for mailing purposes. [Isabel] did not live with Cabrera." (Id. ¶ 37.) Rather, Isabel lived with the elderly person for whom she provided care. (Id. ¶ 38.) Isabel produced a copy of her insurance policy showing that she had lived at a different address since January 21, 2014. (Id.)

With respect to Cabrera's grandson, HHA was unable to provide sufficient evidence to support its allegation of unauthorized tenancy. (Id. ¶ 39.) A letter from the grandson's landlord confirmed that he was living at a different address. (Id. ¶ 40.)

Additionally, at the hearing, Gutierrez admitted that he had Cabrera's landlord call Cabrera on a recorded telephone call to ask Cabrera if she charged money for religious consultations. (Id. ¶ 41.) However, Gutierrez did not ask the landlord to inquire as to who lived with Cabrera. (Id.)

In December 2014, Cabrera was informed that HHA decided to uphold its decision to terminate Cabrera's Section 8 Housing Assistance. (Id. ¶ 43.)

**b.    Marquez**

Following Cabrera's June 18, 2014 hearing before HHA—during which Marquez provided evidence that he did not live with Cabrera—Gutierrez went to Marquez's apartment located in North Miami, Florida. (Id. ¶ 57.) Gutierrez asked Marquez's landlord whether, in fact, Marquez resided at the apartment; the landlord confirmed that Marquez had been living there for years. (Id. ¶ 59.)

On November 14, 2014, Marquez received a letter from the North Miami Housing Authority indicating that his Section 8 Housing Choice voucher was being terminated. (Id. ¶ 62.) It stated:

> After a recent report from the Hialeah Housing Authority regarding their client, Rosa Cabrera, Mr. Marquez attended a termination hearing held at their agency and he stated he paid for 6 vehicles under her possession. Upon a review of his background we found that he indeed owned several vehicles. The report also shows he has utilities under a different address.

4

(Id.) On December 4, 2014, Marquez attended his own Termination Hearing during which testimony and other evidence was presented. (Id. ¶¶ 63-64.) Marquez's Section 8 voucher was reinstated after the hearing. (Id. ¶ 64.)

### c. Procedural background

On June 8, 2016, Plaintiffs initiated this lawsuit, filing a three-count Complaint against HHA, Gutierrez, and the City of Hialeah. (See Compl., D.E. 1.) On August 1, 2016, the City filed a motion to dismiss the Complaint for failure to state a claim. (D.E. 16.) The same day, Gutierrez and HHA filed a separate motion to dismiss the Complaint for failure to state a claim. (D.E. 17.) On August 22, 2016, the Court granted the motions to dismiss by default after Plaintiffs failed to timely file responses thereto, and dismissed the case without prejudice. (D.E. 25.)

On September 8, 2016, Plaintiffs filed a Motion to Vacate the Court's Dismissal Order. (D.E. 28.) On October 4, 2016, the Court granted the Motion to Vacate in Part and reopened the case as to HHA and Gutierrez, but not the City because the Amended Complaint did not assert a claim against the City. (D.E. 33.)

On August 22, 2016, Plaintiffs filed the operative First Amended Complaint alleging: (1) civil rights violations under 42 U.S.C. §§ 1983 and 1988 against Gutierrez (Count I); (2) "Vicarious Liability for Constitutional and Civil Rights pursuant to 42 U.S.C. §§ 1983, 1988 Due to Failure to Train, Supervise or Discipline Employees" against HHA, (Count II); and intentional infliction of emotional distress against Gutierrez, (Count III). (D.E. 26.) On October 19, 2016, HHA filed the instant motion to dismiss Count II for failure to state a claim.

5

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

Sinaltrainal v. Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by Mohamad v. Palestinian Auth., __ U.S. __, 132 S. Ct. 1702, 1706 n.2 (2012).

The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

## III. Discussion

HHA moves to dismiss Count II for failure to state a claim for municipal liability under Section 1983. (Mot. at 3-7.) Plaintiffs argue only that HHA is liable for failing to adequately train its employees. (Resp. at 3-6.) Specifically, they argue that HHA "knew or objectively should have known that its officer was going out of his way to have Plaintiffs' Section 8 vouchers terminated, based on false reasons, which were brought to light at the hearings, and that he was motivated by Plaintiffs' religious practices." (Id. at 5.)

The Supreme Court has cautioned "that there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." City of Canton v. Harris, 489 U.S. 378, 387 (1989). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting City of Canton, 489 U.S. at 388); see also City of Canton, 489 U.S. at 389 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior

7

cases—can a city be liable for such a failure under § 1983."). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 410 (1997).

"To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). The Eleventh Circuit "repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." Id. at 1351. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Brown, 520 U.S. at 409).

Assuming arguendo that the Amended Complaint adequately alleges that Gutierrez violated Plaintiffs' constitutional rights, it fails to allege that HHA knew of, and was deliberately indifferent to, a need to train based on a pattern of similar constitutional violations. Based on the allegations contained in the Amended Complaint, the first and only time that HHA became aware that Gutierrez was investigating Cabrera's religious practices was during Gutierrez's testimony during the second (and final) termination hearing on November 7, 2014. (See Am. Compl. ¶¶ 36, 41.) During that hearing, Gutierrez testified that "he had Cabrera's landlord call Cabrera on a recorded telephone call to ask Cabrera if she charged money for religious consultations.

8

Gutierrez did not ask the landlord to inquire as to who lived with her, instead he focused solely on her religious practices." (Id. ¶ 41.) The Amended Complaint contains no allegations indicating that prior to the November 7, 2014 hearing, HHA had any reason to know that Gutierrez (or anyone else) was investigating Cabrera's religious practices, or that any prior constitutional violations had occurred.

Consequently, assuming <u>arguendo</u> that the Amended Complaint adequately alleges that Gutierrez <u>ever</u> violated Plaintiffs' constitutional rights, the Court finds that Plaintiffs have failed to adequately allege that HHA knew of, and was deliberately indifferent to, a need to train based on a pattern of similar constitutional violations. <u>See</u> <u>Gold</u>, 151 F.3d at 1351 (holding that the plaintiff's failure to present evidence of prior constitutional violations was fatal to his failure to train claim); <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1342-46 (11th Cir. 1994) (reversing district court's preliminary injunction against a municipality and holding that the plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the city was aware of a prior incident in which constitutional rights were similarly violated); <u>Wright v. Sheppard</u>, 919 F.2d 665, 674 (11th Cir. 1990) (holding that the plaintiff failed to prove failure to train claim in Section 1983 action because "the need for such training must be plainly obvious to" the final decision-makers and the district court had "found no evidence of a history of widespread prior abuse by Department personnel that would have put the sheriff on notice of the need for improved training or supervision"); <u>Popham v. City of Talladega</u>, 908 F.2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the city on notice of a need to train).

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant Hialeah Housing Authority, Inc.'s Motion to Dismiss Count II of Plaintiffs' First Amended Complaint is **GRANTED**; and

2. Count II of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 10th day of February, 2017.

*[signature]*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**